**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WARRIOR SPORTS, INC., and ATHLETE'S
CONNECTION, INC.,

       Plaintiffs,                   Case No. 08-14812

v.                                         HON. MARIANNE O. BATTANI

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,

       Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**I.    INTRODUCTION**

Before the Court is Defendant the National Collegiate Athletic Association's ("NCAA") Motion for Judgment on the Pleadings. (Doc. 7). Plaintiffs Warrior Sports and Athlete's Connection filed a complaint alleging that the NCAA's act of changing the rules regarding the type of lacrosse sticks that are permitted in collegiate play gave rise to claims of (1) a federal antitrust law violation, (2) tortious interference with business relationships and expectancies, and (3) promissory estoppel. (Doc. 1). For the reasons that follow, the Court **GRANTS** the NCAA's Motion for Judgment on the Pleadings.

**II.    STATEMENT OF FACTS**

This is a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Accordingly, because the Court, in deciding such a motion, must take

all of the opposing party's well-pleaded allegations as true, the following facts are taken from Plaintiffs' complaint. See Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 526 (6th Cir. 2006).

This is a case involving the NCAA's rules regarding the lacrosse stick heads that may be used in collegiate play. Plaintiffs allege that these rules are particularly influential because they not only govern the sticks that may be used in collegiate lacrosse, but they are also adopted by most of the sports' governing bodies, such as the National Federation of High School Sports.

Before September 2006, the NCAA had used the same rules regarding the allowable dimensions of lacrosse stick heads for 30 years. Manufacturers, including Warrior Sports, were able to submit their sticks to the NCAA to obtain confirmation that their sticks complied with the lacrosse rules, and Warrior Sports specifically notes that it did so in 2000. The pre-September 2006 rule only required that lacrosse heads be at least 6.5" at their widest point and 10" from top to bottom. In September 2006, the NCAA rules committee changed the rules ("2006 Rule Change"), effective January 1, 2009, as follows:

| **Measurement from throat of crosse** | **Minimum distance between narrowest point on the crosse** |
|---|---|
| 1.25" | 2.75" (all measurements) |
| 3" | 3.25" (all measurements) |
| 5" | 4.25" front and 3.5" back |
| The widest point | 6.5" front and 6" back |

The NCAA claimed that it was changing the dimensions of the lacrosse stick head in order to promote free dislodgment of the ball during play.  This rule would have rendered the vast majority of all current men's lacrosse heads illegal, including 14 of Warrior Sports' 15 lacrosse heads.  Warrior Sports initiated a lawsuit over this rule change, but it subsequently withdrew the suit when the NCAA agreed to reconsider the 2006 rule change.

In September 2007, the NCAA rules committee adopted the following rules ("2007 Rule Change"), to be effective January 1, 2010:

| Measurement from throat of crosse | Minimum distance between narrowest point on the crosse |
|---|---|
| 1.25" | 3" (all measurements) |
| 3" | 3" (all measurements) |
| 5" | 4" front and 3.5" back |
| The widest point | 6.5" front and 6" back |

This rule also would have rendered almost all current lacrosse heads illegal and, in particular, would have rendered all of Warrior Sports' heads illegal.  In addition, the aforementioned specifications tracked designs patented by Warrior Sports.  The NCAA claims that it discovered these patents after it adopted the 2007 Rule Change.  Accordingly, the NCAA asked Warrior Sports whether it would be willing to license its intellectual property rights to other lacrosse manufacturers in connection with the 2007 Rule Change.  The NCAA also asked to know the terms under which Warrior Sports would grant such licensing rights.  Plaintiffs allege that this letter was an implicit threat that the NCAA would change the rules again to Warrior Sports detriment if Warrior

3

Sports did not cooperate. Warrior Sports responded by claiming that it was inappropriate for the NCAA to be brokering deals between it and its competitors. Warrior Sports went on to indicate that it could not make a decision to license its intellectual property rights in the abstract because it made those decisions on a case-by-case basis.

The NCAA subsequently implemented the following rule change in February 2008 ("2008 Rule Change"), to be effective January 1, 2010:

| Measurement from throat of crosse | Minimum distance between narrowest point on the crosse |
|---|---|
| 1.25" | 3" (all measurements) |
| 3" | 3" (all measurements) |
| 5" | 3.5" - 4" front and 3.5" back |
| The widest point | 6" - 6.5" front and 6" back |

This rule also would render all of Warrior Sports current lacrosse stick heads illegal. Plaintiffs claim that the NCAA enacted this rule in collusion with Warrior Sports' competitors. Plaintiffs allege that the rule changes by the NCAA will significantly inhibit competition and innovation in the lacrosse head market. In addition, Plaintiffs contend that the rule change will force lacrosse manufacturers to scrap their inventory, accept return of products from retailers, and retool their manufacturing process to produce new sticks.

### III. STANDARD OF REVIEW

This Court will grant a Rule 12(c) motion for judgment on the pleadings "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Rawe, 462 F.3d at 526 (citation omitted). In reviewing such a motion, the Court construes the complaint in the light most favorable to the plaintiffs, accepts the complaint's factual allegations as true, and determines whether the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. Id.

### IV. ANALYSIS

*1. Antitrust Claims*

The NCAA argues that Plaintiffs' antitrust claims fail because the lacrosse stick head rules are not commercial in nature and, therefore, not subject to antitrust scrutiny.

Section 1 of the Sherman Act states, "Every contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The Sixth Circuit has held that the actions of the NCAA are subject to the Sherman Act when the actions are "commercial in nature." Worldwide Basketball & Sport Tours, Inc. v. NCAA (Worldwide Basketball), 388 F.3d 955, 958 (6th Cir. 2004). For example, in NCAA v. Board of Regents of Univ. of Okla., the Supreme Court held that the NCAA's restriction of the number of televised football games violated the Sherman Act. 468 U.S. 85, 120. The Court also noted, however, "It is reasonable to assume that most of the regulatory controls of the NCAA are justifiable means of fostering competition among amateur athletic teams and therefore procompetitive because they enhance public interest in intercollegiate

athletics." Id. at 117. The court went on to distinguish the restriction on television broadcasts, which was at issue in that case, from, among other things, the "rules defining the conditions of the contest." Id. Likewise, in Worldwide Basketball, the Sixth Circuit held that an NCAA rule limiting the number of preseason tournaments that a school's basketball team could participate in was commercial in nature because the rule "has some commercial impact insofar as it regulates games that constitute sources of revenue for both the member schools and the Promoters." 388 F.3d at 959.

The Sixth Circuit also recently reaffirmed this principle when it held that the NCAA's imposition of sanctions, which made it difficult for a coach to obtain employment with NCAA schools, as a result of the coach's violation of NCAA recruiting and academic rules, did not constitute an antitrust violation. Bassett v. NCAA, 528 F.3d 426, 429 (6th Cir. 2008). In that case, the Sixth Circuit indicated that it agreed with the district court's conclusion that the NCAA's enforcement of the rules at issue was not commercial activity because the rules "were intended to ensure fair competition in intercollegiate athletics." Id. at 433.

In order to establish a violation of the Sherman Act, a plaintiff must prove that the defendant unreasonably restrained trade in a relevant market. NHL Players' Ass'n v. Plymouth Whalers Hockey Club, 325 F.3d 712, 718 (6th Cir. 2003). The reasonableness of a trade restraint is assessed using either a "*per se* rule" or a "rule of reason." Id. In this case, Warrior Sports does not contend that the *per se* rule applies. (See doc. 13 at 12). The rule of reason uses a burden-shifting framework that requires the court to analyze the history of the restraint and the restraint's effect on competition. See NHL Players' Ass'n, 325 F.3d at 718.

> First, the plaintiff must establish that the restraint produces significant anticompetitive effects within the relevant product and geographic markets. If the plaintiff meets this burden, the defendant must come forward with evidence of the restraint's procompetitive effects to establish that the alleged conduct justifies the otherwise anticompetitive injuries. If the defendant is able to demonstrate procompetitive effects, the plaintiff then must show that any legitimate objectives can be achieved in a substantially less restrictive manner.

Id. (quotation and citations omitted).

The NCAA's rule regarding the type of lacrosse equipment that may be used during play appears not to be subject to antitrust scrutiny, in and of itself, because, it is not "commercial in nature." Worldwide Basketball, 388 F.3d at 958. In particular, the rule does not directly relate to the NCAA's commercial or business activities. See Bassett, 528 F.3d at 429. As such, the rule is only directed towards increasing the quality of play in college lacrosse and, thereby, enhancing interest in intercollegiate lacrosse. See Board of Regents of Univ. of Okla., 468 U.S. at 117 (stating that most of the NCAA's regulations are a "justifiable means of fostering competition among amateur athletic teams, [which] enhance[s] public interest in intercollegiate athletics."); Bassett, 528 F.3d at 429 (holding that the NCAA's enforcement of rules that were intended to insure fair competition in intercollegiate athletics was not commercial activity).

This case is analogous to Adidas America, Inc. v. NCAA, where the district court found that a NCAA bylaw prohibiting manufacturer's logos that were larger than a specified size was noncommercial. 40 F.Supp.2d 1275, 1286 (D.Kan. 1999). The court first stated that the bylaw had noncommercial purposes and objectives. Id. The court went on to find that the bylaw did not confer any direct economic benefit upon the NCAA

7

because, even though the bylaw did not restrict "NCAA Football" logos, there was no evidence that the NCAA was a competitor in the sports apparel market.  Id.

Like the rule in Adidas America, Inc., the rule relating to lacrosse stick heads has a noncommercial purpose—to promote free dislodgment of the ball.  In addition, Plaintiffs do not allege that the NCAA is a competitor in the lacrosse stick market or that the rule at issue in this case confers any commercial benefit upon the NCAA.  Accordingly, because the rule, in and of itself, is not commercial in nature, it is not inherently subject to challenge under the Sherman Act.  See Worldwide Basketball, 388 F.3d at 958.

In this case, however, Plaintiffs allege that the 2008 Rule Change was enacted in collusion with Warrior Sports' competitors.  Accepting this allegation as true, the 2008 Rule Change would be commercial in nature because Warrior Sports' competitors presumably sought to enact the rule in order to benefit commercially.  To violate the Sherman Act, however, the 2008 Rule Change also must restrain trade or commerce. See 15 U.S.C. § 1.  As will be shown, the 2008 Rule Change does not constitute such a restraint.

Plaintiffs allege that only the 2008 Rule Change was enacted in collusion with Warrior Sports' competitors.  The only way the 2008 Rule Change differed from the 2007 Rule Change was that it reduced the minimum dimension for the front of the stick head.  Therefore, any stick that was permitted under the 2007 Rule Change is still permitted under the 2008 Rule Change.  Furthermore, some sticks that were not previously permitted under the 2007 Rule Change will now be permitted under the 2008 Rule Change's reduced minimum dimensions.  As such, the 2008 Rule Change does

not violate the Sherman Act because it does not restrict trade or commerce.  See 15 U.S.C. § 1.   Thus, Plaintiffs' Sherman Act claim fails due to the fact that the 2006 and 2007 Rule Changes were not subject to the Sherman Act, and the 2008 Rule Change does not restrict trade or commerce.

*2.      Tortious Interference claim*

The elements of the tort of interference with an advantageous business relationship are (1) a valid business relationship or expectancy (2) known to the defendant who (3) engaged in intentional conduct (4) causing the disruption or termination of that relationship or expectancy resulting in (5) damages.  Ass'n Research & Dev. Corp. v. CNA Fin. Corp., 123 Mich. App. 162, 169 (Mich. Ct. App. 1983); N. Plumbing & Heating, Inc. v. Henderson Bros., Inc., 83 Mich. App. 84, 93 (1978).  In order to make out such a claim, a plaintiff must show either an act that is *per se* unlawful or a lawful act done with a malicious and unlawful purpose.  CMI Int'l, Inc. v. Intermet Int'l Corp., 251 Mich. App. 125, 131 (Mich. Ct. App. 2002) (quotation omitted).

Although Plaintiffs allege that the NCAA colluded with Warrior Sports' competitors in adopting the 2008 Rule Change, Plaintiffs' allegations do not show that the adoption of the 2008 Rule Change was done with a malicious and unlawful purpose, because the only effect of the 2008 Rule Change was to increase the number of sticks that would be allowed under the NCAA's rules.  Furthermore, as Plaintiffs do not allege that the NCAA adopted either the 2006 or 2007 Rule Changes in collusion with Warrior Sports' competitors, Plaintiffs' allegations also do not show that these rule changes

were adopted with a malicious and unlawful purpose.  Accordingly, Plaintiffs' tortious interference claim fails.  See id.

### 3. *Promissory Estoppel*

The NCAA argues that Warrior Sports' claim fails because it has not alleged that the NCAA promised not to change the lacrosse stick dimension rules.

The elements of a promissory estoppel claim are:

(1) a promise,

(2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of promisee,

(3) which in fact produced reliance or forbearance of that nature, and

(4) in circumstances such that the promise must be enforced if injustice is to be avoided.

Ardt v. Titan Ins. Co., 233 Mich. App. 685, 692 (Mich. Ct. App. 1999).

Warrior Sports claims that the NCAA's act of allowing manufacturers to submit equipment for review constitutes a promise that approved equipment will be legal for play.  This claim fails because the NCAA's act of reviewing proposed lacrosse sticks is , at most, a promise that approved sticks complied with the rules in effect at that time.  The NCAA was not promising never to change its rules in a way that would make a previously approved stick illegal.  Therefore, Warrior Sports' promissory estoppel claim fails.  See id.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings is **GRANTED.**

          s/Marianne O. Battani
          MARIANNE O. BATTANI
          UNITED STATES DISTRICT JUDGE

DATED: March 11, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

          s/Bernadette M. Thebolt
          DEPUTY CLERK